THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN BRUMAS, Defendant-Appellant.

Third District   Nos. 3—89—0558 through 3—89—0562 cons.

Opinion filed October 16, 1990.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Gary F. Knidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

This case comes on appeal for a second time pursuant to defendant's petition for post-conviction relief. In the first appeal, this court determined that defendant was entitled to an evidentiary hearing for the purpose of determining whether defendant was the victim of ineffective assistance of counsel, thereby making his guilty pleas involuntary. (See *People v. Brumas* (1986), 142 Ill. App. 3d 178, 491 N.E.2d 773.) An evidentiary hearing was subsequently held after which the trial court denied defendant's petition for post-conviction relief. Defendant now appeals the trial court's order entered September 5, 1989, raising the following three specific issues for review: whether the trial court erred in denying the defendant's post-conviction petition on the basis that defendant voluntarily waived his attorney's conflict of interest; whether the trial court erred in denying the defendant's post-conviction petition on the basis that trial counsel made no threat to withdraw from the case if defendant did not accept the people's tendered plea offer; and, finally, whether defendant was denied effective assistance of post-conviction counsel because of counsel's failure to assert an issue regarding restitution.

Defendant was originally charged with five counts of unlawful delivery of a controlled substance, two counts of unlawful delivery of cannabis, and one count of misdemeanor theft. Defendant entered negotiated pleas of guilty in April 1984 to the five charges of unlawful delivery of a controlled substance. In exchange, the State dismissed the other three charges and recommended that defendant be sen-

tenced to concurrent terms of imprisonment ranging from three years to six years. The plea agreement also imposed fines and ordered restitution to the City of Moline in the amount of $9,000, which was the amount spent by the Moline police department in purchasing drugs from defendant.

Defendant subsequently filed a post-conviction petition alleging his pleas were involuntary because he had been denied effective assistance of counsel. Specifically, defendant alleged his attorney, Richard McClean, had a conflict of interest because his firm acted as special assistant Attorney General in consumer fraud cases. Moreover, defendant alleged that his attorney told him if he did not accept the negotiated plea, he would withdraw. On defendant's first post-conviction appeal, he also argued that the trial court was without authority to order defendant to pay restitution to the City of Moline.

After remand from the first appeal, the Rock Island public defender's office was appointed on May 4, 1987, to represent defendant at the post-conviction hearing. On May 16, 1989, the State filed a motion to dismiss for want of prosecution. The trial court denied the motion but directed that a hearing on the matter be held within 60 days. A hearing was subsequently commenced on August 21, 1989. At the hearing, defendant testified as follows: That he was represented by Richard McClean; that he believed the cause would go to trial until four days prior to the actual trial date; that he became aware his attorney worked for the Attorney General three to four weeks after his arrest; that he was aware two to three weeks after his arrest that he needed to sign a waiver before McClean could continue to represent him; that he signed the waiver the day he pleaded guilty because he felt he had no choice; that the plea agreement was first offered two days prior to trial and that his attorney advised "[i]f you don't take it you'll have to find another attorney"; that he had paid his attorney $2,200 and he had no funds to hire another attorney; that he knew he had the option of getting a court-appointed attorney but he did not seek one because "I didn't know any better"; that he was pressured to sign the waiver in order for his attorney to represent him; that it was not his desire to plead guilty; that prior to his plea he spent no more than 2½ to 3 hours discussing this case with his attorney; and that he believed his attorney's conflict denied him effective assistance of counsel because he really didn't have a lawyer that tried to help him.

On cross-examination, however, defendant acknowledged that he did not relay any of his concerns regarding the waiver to the judge after having been asked to do so by the judge. Defendant further ac-

knowledged that his apparent lack of choice about the waiver and about his attorney threatening to withdraw were not expressed to the judge after having been asked if he had anything else he would like to add. Finally, defendant admitted the extent of his drug addiction and the circumstances surrounding his purchases of drugs leading up to the arrests.

After hearing defendant's testimony, the court continued the hearing to August 28, 1989, to hear the testimony of Richard McClean. At this hearing McClean testified, in relevant part, as follows: that prior to defendant's plea he had numerous conferences with defendant; that he told defendant he had no defense to the charges; that the defense of entrapment had been thoroughly discussed with defendant and case law was presented to defendant substantiating his position that entrapment was not available as a defense; that he recommended to defendant that defendant accept the State's offer including a prison term for the minimum of six years; that he advised defendant that he could arrange for another attorney to look into the case and provide a second opinion if defendant was uncomfortable with his advise; that he told defendant the State intended to try each case separately and he could not do six felony trials for $2,500.

The trial court determined that at the time defendant entered into the negotiated plea he was "as agreeable as anybody could be to that disposition." Further, that defendant was satisfied with his attorney's representation and that defendant knew if his attorney withdrew from the case, that he had available to him the services of the public defender's office. Finally, the trial court determined that defendant had no feasible entrapment defense. Thus, considering the circumstances presented, the trial court denied the petition for post-conviction relief.

■ Regarding the conflict of interest issue, defendant asserts that the trial court misapprehended the law when it stated that defendant's attorney did not have a conflict of interest. Defendant argues that a *per se* conflict of interest develops when a special assistant Attorney General represents a criminal defendant. (*People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Fife* (1976), 76 Ill. 2d 418, 392 N.E.2d 1345.) We agree, however, the cases cited above for this proposition also indicate that the conflict may be nullified if the defendant is adequately informed of the conflict and knowingly and intelligently waives the conflict. We consider the trial court's statements to be made after having heard sufficient testimony and agreement, not as a statement of law.

■ In this case, defendant's attorney had disclosed in writing shortly after taking on defendant's case that his law firm had a conflict of interest because it acted as special assistant Attorney General for the consumer fraud division and in that regard advised that the firm has earned fees from and established a close relationship with Attorney General's office. The defendant was also asked to execute a receipt and waiver which indicated that defendant understood his attorney's conflict and the possibility that it could influence his attorney's representation. Defendant executed the waiver and acknowledged to the court at his sentencing hearing that he had executed the waiver with full knowledge and understanding of its contents. Defendant's statement that he had "no choice" in the matter does not correlate with his execution of the waiver prior to the plea hearing, his knowledge that he could have had the services of the public defender and his in court statements to the judge at the plea hearing. There was nothing more that defendant's attorney could have done to advise defendant of his conflict and allow the defendant the opportunity to seek other counsel. We therefore find that defendant knowingly and intelligently waived his attorney's *per se* conflict of interest.

■■ ■ The second issue to be addressed is whether defendant's attorney coerced defendant into pleading guilty against his wishes by threatening to withdraw from the case if the State's offer was not accepted. Again, defendant claims he had "no choice" in the matter because he stated his attorney told him to accept the offer or get another attorney a few days prior to the trial date. Mr. McClean, however, stated that at no time did he threaten to withdraw from the case. He did, however, advise that his client accept the offer as there was no reasonable defense to be made and he could not take six felony cases to trial for $2,500. Apparently, defendant believed that entrapment would be used as a defense to the charges against him; however, Mr. McClean indicated he advised defendant entrapment was not available and provided cases to defendant to support his position. Most significant, however, is defendant's answers to the court's questions regarding the plea agreement. The record reveals that the court thoroughly advised defendant of his rights, the charges against him and the consequences of pleading guilty to the offenses. Defendant at all times persisted in his plea of guilty and desire to enter into the plea negotiation. Moreover, just prior to imposing sentence, the court asked defendant the following questions and defendant gave the following responses:

"THE COURT: Mr. Brumas, before the court imposes sentencing, is there anything you wish to tell me regarding this

case; that is, how you were treated or represented or anything else you believe the court should hear at this time?

THE DEFENDANT: No, Ma'am.

THE COURT: This is the time to say anything if you believe you would want to advise the court of anything.

THE DEFENDANT: Just one thing. I was strung out before this investigation started, and I was hurting for money at the time."

Additionally, we note that defendant's cross-examination testimony at the post-conviction hearing supports Mr. McClean's position that entrapment was not available to defendant. It is not our duty to rethink the strategy of the attorney in advising his client to plead guilty. Our determination is limited to whether counsel's representation fell below an objective standard of reasonableness and, if so, whether there was a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) We fail to find that counsel acted unreasonably, but determine that negotiating for a minimum sentence appeared to be the reasonable strategy to take. The record does not show signs of any threat made by defendant's attorney to withdraw other than defendant's statements made years after the fact. Defendant's plea was voluntary.

■ Finally, defendant claims trial counsel at the post-conviction proceedings was ineffective for failing to raise the issue of whether the restitution judgment entered in favor of the City of Moline was inappropriate. In *People v. Evans* (1984), 122 Ill. App. 3d 733, 461 N.E.2d 634, this court determined that a governmental entity is not a "victim" as defined by section 5—5—6(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—6(b)) where public moneys have been expended to purchase drugs from a suspect. The circumstances presented in *Evans* regarding the drug purchased by undercover agents are indistinguishable from the facts presented herein. The State, however, contends that *Evans* has no application here because this was a fully negotiated plea arrangement and defendant has waived the right to complain about the propriety of the restitution order. Secondly, the State asserts that this court, on the first appeal, in essence determined that the restitution issue was intrinsically associated with the overall voluntariness of petitioner's guilty pleas. Our previous opinion, however, addressed only the issue of whether defendant was entitled to a hearing. We made absolutely no determination regarding the restitution.

We do find, however, that *Evans* does not apply to this case because, unlike *Evans*, this restitution order was made pursuant to a fully negotiated plea agreement. Since defendant voluntarily entered into the plea agreement with a full understanding of all of its terms and conditions, he cannot now claim ineffective assistance of counsel for trial counsel's failure to raise the restitution issue at the post-conviction proceeding. To vacate the restitution order would require a finding that defendant involuntarily entered into the plea agreement. Such a finding is simply not dictated by the record.

For all of the foregoing reasons, the trial court's order denying defendant's petition for post-conviction relief is affirmed.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.