THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESUS BECERRIL, Defendant-Appellant.

First District (4th Division)   No. 1—97—1672

Opinion filed September 2, 1999.

Nathan Diamond-Falk, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:

Defendant, Jesus "Jesse" Becerril (defendant), was convicted of

first degree murder and robbery. On appeal, defendant contends that: (1) he was denied effective assistance of counsel; (2) the State failed to establish the victim's identity beyond a reasonable doubt; (3) the trial court erred in denying his motion to suppress his confession; (4) his due process rights were violated by the State's failure to test his blood for cocaine; (5) the trial court erred in admitting other crimes evidence; and (6) the trial court erred in refusing to instruct the jury on the offense of concealment of a homicidal death.

The following facts are relevant to this appeal. In 1984, the victim, Ofer "Josh" Dagan, moved to Chicago from Israel. Dagan soon met Mohammed Mansoori, Arik Mizrachi, and Modesto Echezaretta.

On October 13, 1993, Dagan met with friends for dinner. Dagan told his friends that he had a meeting with some "bad people." Prior to leaving the restaurant, Dagan made plans to meet his friends after his 11 p.m. meeting. Dagan never met his friends.

On October 14, 1993, Modesto told Arik that he was looking for Dagan because Dagan had "screwed him over" for a lot of money. Modesto told Arik and Mansoori that he paid Dagan $225,000 for 10 kilos of cocaine, but Dagan never showed up with the cocaine. On October 16, 1993, Dagan's car was found at O'Hare International Airport. On October 20, 1993, Officer David Suerth was assigned to investigate a missing person's report involving Dagan. Dagan had been reported missing around October 19, 1993, by his brother Adi.

On November 27, 1993, the remains of a body were discovered inside a boiler. The body was taken to the morgue where Dr. Kalelkar performed an autopsy. The corpse was severely burned and in an advanced stage of decomposition. Kalelkar determined that the body was that of a white male. An internal examination revealed a 1½-inch defect in the neck area. Kalelkar stated that the defect was consistent with ligature strangulation. The cause and manner of death as well as the identity of the victim were unknown.

On April 13, 1994, Officer Robert Rutherford was assigned to investigate the "Troche" home invasion. On April 15, 1994, police arrested Gerald Pittman and Modesto for the break-in. Police began to search for defendant, who was identified as the third cooffender in this incident.

In July 1994, United States Marshall Steven David submitted Dagan's dental records to Kalelkar. On July 30, 1994, Dr. John Kenney, a forensic dentist and expert in odontology, reviewed the dental records. After comparing the X rays of the corpse found on November 27, 1993, with Dagan's predeath X rays, Kenney identified the "John Doe" as Dagan. Additionally, a visual examination of the corpse's dental work matched Dagan's records. On August 28, 1994, Officer Janko stopped

a mini-van for a traffic infraction. Janko asked the driver, defendant, for a license. Janko recovered a loaded semi-automatic 9 millimeter pistol from the van.

On January 14, 1995, defendant was arrested on an outstanding weapons warrant. On January 16, 1995, the Troches, victims of a home invasion, identified defendant as one of the perpetrators from a police photograph. On January 17, 1995, defendant was arrested for home invasion. Defendant was given his *Miranda* rights and indicated that he understood those rights. Defendant was searched and taken to the lockup.

Upon entering the lockup, defendant was visually examined. No signs of distress or a drug-induced state were noted. Defendant was again advised of his rights. Defendant acknowledged those rights. Assistant State's Attorney (ASA) Rosenthal handwrote defendant's statement with his consent.

With respect to the home invasion, defendant told Rosenthal that on April 13, 1994, he, Modesto and Pittman went to the Troche home because someone there owed Modesto money. Defendant, Modesto, and Pittman wore Drug Enforcement Agency (DEA) hats and bulletproof vests. Modesto knocked at the front door and told those inside that he had a search warrant. Modesto forced the man and woman into a bedroom while defendant guarded them. Modesto and Pittman searched the house for money and cocaine. The trio left 20 minutes later.

On January 18, 1995, at approximately 12:30 a.m., defendant was informed of his rights and questioned about the murder of Ofer Dagan. He acknowledged those rights and gave a statement about the murder of Dagan. Neither Rosenthal nor any other person told defendant that he would be treated as a witness regarding the murder. Defendant was allowed to make a phone call. Defendant called his wife. Neither defendant nor his wife called an attorney. Around 2 a.m., defendant and officers proceeded to the garage where defendant said the murder of Dagan had taken place.

On January 18, 1995, defendant was returned to the lockup at 7 a.m. Around 7 p.m., ASA Burns gave defendant the *Miranda* warning. Defendant indicated that he wanted to make a court-reported statement about Dagan's death. After the statement was transcribed, Burns reviewed the statement with defendant. Defendant made a correction to the statement.

With respect to the murder of Ofer Dagan, defendant told Burns that on October 13, 1993, Modesto called defendant and told defendant to meet him at a warehouse. Dagan was to pick up payment for drugs that Dagan had given Modesto. When defendant arrived, Dagan

was on the floor, facedown, hands cuffed behind his back, and gagged. Modesto had an extension cord around Dagan's neck. Modesto was choking Dagan with the cord. Modesto told defendant to close the door and look out for anyone who might have been with Dagan. Dagan was kicking his legs. About 15 minutes later, Modesto uncuffed Dagan. The men threw Dagan into a tarp and placed his body inside the trunk of Dagan's car. Modesto and Pittman gave defendant a kilo of cocaine and told him to "shut up and be cool." Defendant followed Modesto and Pittman to an abandoned factory. Modesto and Pittman removed Dagan from the trunk and put his body inside an incinerator. Defendant then fled.

On January 18, 1995, Kalelkar was asked whether she could determine the cause of Dagan's death if provided with additional information. After reviewing police and autopsy reports, Kalelkar determined that Dagan had been strangled to death. Kalelkar also concluded that the manner of death was homicide. Kalelkar testified that police reports and witness/defendant statements are often used to determine the cause of death. Strangulation was consistent with Kalelkar's previous autopsy findings.

On January 19, 1995, defendant called his brother, Isaac Becerril. Defendant asked Isaac to contact defendant's attorney, Richard Mottweiler. Isaac believed defendant was high because he spoke fast and was incoherent. On January 19, 1995, a court order was entered instructing the Cook County sheriff's department to test defendant's blood and urine for the presence of cocaine. The test was never performed.

Prior to trial, a hearing on defendant's motion to suppress his confession was held. At this hearing, defendant testified that he hid a gram of cocaine in his jacket and ingested it while in the lockup. Defendant claimed that he ingested about three grams of cocaine between January 14, 1995, and January 17, 1995. When defendant asked to call his attorney, the officers insulted his attorney. Prior to giving his statement, defendant's requests to place a phone call were denied. After giving his statement, defendant was allowed to call his wife. Defendant told his wife that the officers made him promises. Defendant did not remember telling Rosenthal that he was not under the influence of drugs or alcohol. Defendant did not remember being read his *Miranda* rights. Defendant did not recall signing the murder confession or making any correction to that statement. Additionally, defendant did not remember stating that the murder confession was not in exchange for any promises or threats. Defendant's motion to suppress his statement was denied. Following a jury trial, defendant was sentenced to 55 years' imprisonment for the offenses of first degree murder and robbery. This appeal followed.

■ Defendant contends that he was denied effective assistance of counsel. In reviewing defendant's claim of ineffective assistance of counsel, the appellate court's determination is limited to whether counsel's representation fell below an objective standard of reasonableness and, if so, whether there was a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *People v. Brumas*, 204 Ill. App. 3d 542, 547, 561 N.E.2d 1366 (1990). Defendant bears the burden of proving that counsel's representation was unreasonable under current prevailing professional norms and that the acts complained of were not sound strategy. *People v. Atkins*, 161 Ill. App. 3d 600, 608, 515 N.E.2d 272 (1987). Finally, our supreme court has held that there is no *per se* conflict of interest in an attorney simultaneously representing two or more codefendants. *People v. Sanchez*, 161 Ill. App. 3d 586, 594, 515 N.E.2d 213 (1987).

■ Defendant argues that his trial attorney had a *per se* conflict. A *per se* conflict of interest will be found whenever there is a showing that a defense counsel's past or present commitment to others raises the possibility of an unwillingness or inability to effectively represent a defendant. *People v. Drysdale*, 51 Ill. App. 3d 667, 670-71, 366 N.E.2d 394 (1977), citing *People v. Stoval*, 40 Ill. 2d 109, 113, 239 N.E.2d 441 (1968). In such a situation, a reversal will be warranted even without a showing of any actual prejudice resulting thereby. *Drysdale*, 51 Ill. App. 3d at 670.

■ In the instant case, the State filed a motion for disqualification of counsel on behalf of defendant. Defendant and codefendant Modesto were charged with the first degree murder of Dagan. Defendant and Modesto retained Mottweiler as counsel. Prior to this incident, Mottweiler acted as legal counsel for Modesto and Modesto's family. In addition, in January 1996, Mottweiler testified on behalf of Modesto at a suppression hearing with respect to Dagan's murder.

In its motion for disqualification of counsel, the State noted that defendant rejected several offers extended to him. While there was no proof of any wrongdoing, the State was concerned that Mottweiler's advice and counsel to defendant were motivated, perhaps subconsciously, by his loyalty to Modesto. In response to that particular concern, the trial court appointed a public defender. After the public defender was appointed, defendant again rejected all offers extended to him. Defendant was again advised of the potential conflict. Nevertheless, defendant insisted that his choice of counsel was Mottweiler. Because defendant was so adamant about retaining Mottweiler as counsel, the trial court requested that defendant execute a conflict waiver in open court. Accordingly, defendant rendered a competent

written waiver to conflict-free counsel. The trial court allowed the public defender leave to withdraw. Mottweiler was allowed to refile his appearance in the case. Based on these facts, it is our belief that defendant was adequately forewarned of Mottweiler's potential conflict.

Nonetheless, defendant now argues that he did not knowingly and intelligently waive his right to conflict-free counsel. The conclusion that the right to conflict-free counsel has been knowingly and intelligently waived depends upon the particular facts and circumstances surrounding the case. *People v. Hudson*, 137 Ill. App. 3d 606, 608, 484 N.E.2d 1246 (1985). The background, experience, and conduct of the defendant are relevant factors to be considered. *Hudson*, 137 Ill. App. 3d at 608.

In the instant case, it is our view that defendant was perfectly capable of understanding the significance of the alleged conflict and how it could arguably affect his legal representation. We are unwilling to conclude that defendant did not knowingly and intelligently waive his right to conflict-free counsel. It is clear to us that defendant effectuated a competent waiver despite repeated admonishments by the trial court. Thus, we believe that knowledgeable assent by defendant vitiates any claim of conflict of interest. *People v. Stroner*, 104 Ill. App. 3d 1, 8, 432 N.E.2d 348 (1982).

■ Defendant also argues that defense counsel had an actual conflict which manifested itself at trial. Where no *per se* conflict of interest exists, defendant must show the existence of an actual conflict and actual prejudice. *People v. Taylor*, 165 Ill. App. 3d 1016, 1021, 520 N.E.2d 907 (1988). Where an actual conflict of interest exists, the defendant is not required to prove that the conflict contributed to his conviction. *People v. Spreitzer*, 123 Ill. 2d 1, 18, 525 N.E.2d 30 (1988). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 64 L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1719 (1980); *Spreitzer*, 123 Ill. 2d at 18.

■ Here, defendant fails to give direct evidence to support his contention that his attorney had an actual conflict at trial. The record does not suggest that Mottweiler ineffectively represented defendant. Thus, we find that there was no actual conflict which manifested itself at trial.

Defendant contends that the State failed to establish the identity of the victim beyond a reasonable doubt. Specifically, defendant maintains that the authenticity of the dental records as well as the contents of the medical examiner's addendum report were based on hearsay testimony. Defendant further contends that the *corpus delicti* may not rest exclusively on his confession.

■ The elements to be proved in a case of criminal homicide are proof of death and proof of a criminal agency causing death, the *corpus delicti*. *People v. Carbona*, 27 Ill. App. 3d 988, 1006, 327 N.E.2d 546 (1975). It is well established that an extrajudicial confession alone is insufficient to support a conviction; it must be corroborated by other evidence. *People v. Stanley*, 146 Ill. App. 3d 912, 918, 497 N.E.2d 496 (1986). In Illinois, proof of the *corpus delicti* corroborates an extrajudicial confession. *Stanley*, 146 Ill. App. 3d at 918.

■ In the instant case, we believe that testimony based on hearsay that is not objected to at trial should be given appropriate consideration. *People v. Rettig*, 131 Ill. App. 2d 687, 690, 264 N.E.2d 835 (1970). Further, the evidence contained in the addendum report corroborates the details given in defendant's confession. Kalelkar testified that her findings were consistent with death by strangulation of the type described by defendant in his confession. Finally, the sufficiency of the facts proved and testimony regarding manner of death were not objected to at trial, and, thus, the matter is waived.

■ Defendant contends that the trial court erred in denying the motion to suppress his confession. We disagree. Defendant now claims that he does not remember giving the statement because he was "high" on cocaine. The voluntariness of a confession will be determined from the totality of the circumstances. *People v. Stone*, 61 Ill. App. 3d 654, 659, 378 N.E.2d 263 (1978). At the time of defendant's confession, defendant told police that he was not under the influence of cocaine. Additionally, upon visual examination, defendant did not appear to be under the influence of drugs. Notwithstanding, we conclude that whether a confession is voluntary " 'is a matter of the competency of the evidence which should be left to the discretion of the trial court.' " *People v. R.D.*, 155 Ill. 2d 122, 138, 613 N.E.2d 706 (1993), quoting *People v. Patterson*, 154 Ill. 2d 414, 450, 610 N.E.2d 16 (1992).

■ Defendant contends that his due process rights were violated when the State failed to test his blood and urine for the presence of cocaine. We cannot agree. Defendant cites several cases that address the issue of destruction of evidence. In those cases, actual evidence was destroyed. *People v. Newberry*, 166 Ill. 2d 310, 652 N.E.2d 288 (1995), is representative of the cases upon which defendant relies.

In *Newberry*, the defendant was charged with unlawful possession of a controlled substance. The substance was seized and lab tests were conducted to determine its chemical content. The substance was inadvertently destroyed. The court held that dismissal of the charges was mandated by due process and was an appropriate discovery sanction under Supreme Court Rule 415 (134 Ill. 2d R. 415(g)(i)). *Newberry*, 166 Ill. 2d at 311.

*Newberry* is distinguishable from the case at bar. In the case *sub judice,* blood and urine samples were never taken. Thus, no evidence was yielded. Defendant, therefore, bases his claim on hypothetical test results. Moreover, defendant has not shown that the State failed to preserve evidence that would have proved beneficial to his defense. Further, the Cook County sheriff's department's failure to test defendant's blood and urine as ordered does not demonstrate that the State acted in bad faith. Consequently, we find no due process violation.

■ Defendant contends that the trial court erred in admitting other crimes evidence. We disagree. Generally, it has been held that other crimes evidence is admissible if relevant for any purpose other than to show propensity to commit crime. *People v. McKibbins,* 96 Ill. 2d 176, 182, 449 N.E.2d 821 (1983). Here, the evidence was admitted to establish: (1) defendant's lack of innocent intent; (2) the circumstances or context of defendant's arrest; and (3) the identification of the weapon used in the crime. Moreover, the claim of cumulative error is unfounded since defendant has failed to prove that the other crimes evidence was improperly admitted. *People v. Albanese,* 104 Ill. 2d 504, 524, 473 N.E.2d 1246 (1984). Furthermore, admissibility of other crimes evidence is within the discretion of the trial court. *People v. Johnson,* 239 Ill. App. 3d 1064, 1074, 608 N.E.2d 36 (1992).

■ Finally, defendant contends that the trial court erred in refusing to instruct the jury on the offense of concealment of a homicidal death. We disagree. A defendant may not be convicted of an offense for which he has not been charged. *People v. Hamilton,* 179 Ill. 2d 319, 323, 688 N.E.2d 1166 (1997). Further, a defendant is entitled to have the jury instructed on a less serious offense if that offense is included in the one charged. *Hamilton,* 179 Ill. 2d at 323. An included offense is one that is established by proof of the same or less than all of the facts and/or a less culpable mental state than that which is required to establish commission of the offense charged. *People v. Lyons,* 26 Ill. App. 3d 193, 198, 324 N.E.2d 677 (1974).

■ ■ Here, defendant was indicted for first degree murder on an accountability theory. First degree murder on an accountability theory requires proof that: (1) defendant, or one for whose conduct he is legally responsible, performed acts that caused death; and (2) when defendant, or one for whose conduct he is legally responsible, performed such acts, he intended to kill or do great bodily harm to another, or knew that such acts would cause death to another, or knew that such acts created a strong probability of death to another. 720 ILCS 5/9—1(a) (West 1996). A person is legally responsible for the conduct of another when, with the intent to promote or facilitate an

offense, "he solicits, aids, abets, agrees or attempts to aid." 720 ILCS 5/5—2(c) (West 1996). Concealment of a homicidal death, however, requires: (1) knowledge that a homicidal death has occurred; and (2) some affirmative act of concealment by defendant. *People v. Cannon*, 150 Ill. App. 3d 1009, 1020, 502 N.E.2d 345 (1986). None of the elements of murder with which the State charged defendant include the uncharged offense of concealment of homicide. Thus, we find that defendant was not entitled to an instruction on concealment of a homicidal death.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.