THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALVARO ORTEGA *et al.*, Defendants-Appellants.

First District (5th Division)    No. 1—99—1761

Opinion filed March 29, 2002.

QUINN, J., dissenting.

Serpico, Novelle & Navigato, Ltd., of Chicago (Robert A. Novelle and Timothy R. Roellig, of counsel), for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Tracey Annen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

This is an interlocutory matter before this court pursuant to Illinois Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)). Following the granting by the trial court of a motion to disqualify defense counsel, defendant petitioned this court for leave to appeal. This court dismissed the petition. Alvaro Ortega subsequently filed a petition for leave to appeal to the Illinois Supreme Court. Pursuant to its supervisory power, the Illinois Supreme Court denied the petition for leave to appeal and remanded the case to this court with directions to hear the appeal.

## THE FACTS

Alvaro Ortega (Ortega) and Eugenio Natal (Natal) were arrested for the delivery of a controlled substance, namely 999.38 grams of cocaine, in violation of section 401(a)(2)(D) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(D) (West 1992)). The delivery took place on August 1, 1996, with the arrest occurring the following day. Although Robert Novelle, Sr., had previously appeared on the defendant's behalf in the pre-arraignment stages of the proceedings, he filed a formal appearance in October 1996.

Prior to trial, the People filed a motion to disqualify Robert Novelle on the grounds that Donald Novelle, his brother and law partner, had represented Juan Montez in four different criminal matters. Juan Montez, when Robert Novelle acted as his lawyer, used the aliases Valentine Mejia and Juan Soliz. It is possible that Montez was the alias and Mejia is the real name. Montez was working for the Metropolitan Enforcement Group (MEG), either for compensation or to work off pending criminal cases. The People's motion alleged that the representation of Montez created a *per se* conflict of interest.

Donald Novelle testified he learned Montez was a witness in a grand jury proceeding in which Ortega was a target. The work Montez was doing for the MEG involved organizing the cocaine purchase from which Ortega now appeals. Donald Novelle allegedly heard that Eugenio Natal was involved in this cocaine purchase but would not be charged. Donald Novelle claims he learned of the agreement between Montez and the MEG after the transaction. He also testified to representing Montez in his attempt to enforce the agreement whereby he worked for the MEG. The People deny that such an agreement exists. When Montez was called to testify before a grand jury, he invoked his fifth amendment right not to testify.

On September 6, 1996, in an informal conference with the trial court to resolve any conflicts, it was recommended that Donald Novelle have another lawyer represent Montez. This was suggested to eliminate any appearance of impropriety. Donald Novelle responded that, based on the purported conflicts waivers before the trial court, he could freely discuss both the cases involving Montez and the facts of any alleged conflict with members of the firm, including Robert Novelle. In subsequent proceedings, although Donald Novelle continued to represent Montez in pending criminal matters, Greg Ginex appeared on his behalf. On September 12, 1996, while being represented by Ginex, Montez testified before the grand jury. Montez ultimately did receive convictions in the cases involving him. His sentence was 30 months' probation. At the time of the conference between Novelle and the trial court in this case, Montez still owed Novelle's firm for legal services.

On April 20, 1999, the trial court asked Ortega and Natal if they understood the nature of the conflict of interest. Each defendant responded that he did. The trial court also questioned each defendant regarding his age, level of education and experience in the legal system. Both defendants indicated that they waived potential conflicts so that Robert Novelle could continue to represent them. Robert Novelle told the court that he had informed the defendants of every relevant fact of the potential conflict of interest. Despite the purported waivers, the trial court found the existence of a *per se* conflict of interest. The trial court also found that no waiver could satisfy the trial court's duty to ensure that a defendant received the undivided loyalty of his counsel.

The trial court's April 20, 1999, order was entered orally. The proceedings were then stayed pending appeal. On April 26, 1999, the trial court entered a written order on the substance of the April 20, 1999, oral order. On May 9, 1999, Ortega filed a petition for leave to appeal under Illinois Supreme Court Rule 306(a)(7). The People filed an answer to the petition. This court dismissed the petition. Defendant next filed a petition for leave to appeal to the Illinois Supreme Court. That petition to the supreme court was denied. In their denial, the supreme court remanded the case to this court with directions to hear the appeal.

## ANALYSIS

Ortega argues that the trial court erred in disqualifying defense counsel because the representation of Montez was neither contemporaneous with the current representation nor harmful to either client's interests. Ortega also argues that there was a knowing waiver of any conflict of interest such that, although the constitutional right to

counsel of his own choosing and the sixth amendment right to the undivided loyalty of counsel are in competition, the right to counsel of his own choosing must prevail. Specifically, Ortega argues that the representation of Montez was over for two years by the time Ortega was arrested. He also maintains that the prior representation ended and did not resume at any point. Even if it did, Ortega claims that Montez's potential testimony would potentially exonerate Natal and not him. As a result, Ortega argues Montez's potential testimony was not truly opposed to his interests. Ortega also points out that, since the trial court found Montez's agreement unenforceable, any potential benefit Montez might have received at the cost of Ortega's interests was essentially mooted.

The People respond that the trial court was correct in disqualifying defense counsel in light of the *per se* conflict of interest which exists in this case. The People argue that, where an actual or possible conflict of professional interest is found to exist, prejudice is presumed. The People emphasize that, although Robert Novelle's firm no longer represents Montez, Donald Novelle did represent Montez during hearings that directly related to the facts and circumstances of the case *sub judice*. It argues the trial court was properly concerned with the appearance of impropriety, should the jury become aware of the prior representation of the People's witness in matters directly related to this case. The trial court also expressed concern that Robert Novelle's cross-examination might be subliminally restricted or limited, especially in light of any information he gained by way of the attorney-client privilege and Montez's belief that Natal was not supposed to be arrested or prosecuted for the crime.

■ Appellate review of a purely legal question is *de novo*. *People v. Hall*, 198 Ill. 2d 173 (2001); *People v. Dameron*, 196 Ill. 2d 156, 162 (2001); *People v. Krause*, 273 Ill. App. 3d 59, 62 (1995). A question of law arises when neither the credibility of the witnesses nor the facts are at issue. *People v. Walker*, 308 Ill. App. 3d 435, 438 (1999), citing *People v. Oaks*, 169 Ill. 2d 409, 447-48 (1996).

■ Ortega claims that defense trial counsel should not have been disqualified because, although there was the potential for a conflict of interest, harm to the defendants' position was nullified by the knowing waivers made in this case. "The right to the effective assistance of counsel is a fundamental right and entitles an accused to the undivided loyalty of his counsel." *People v. Lawson*, 163 Ill. 2d 187, 208-09 (1994); Ill. Const. 1970, art. I, § 8; U.S. Const., amends. VI, XIV. This right was designed to assure fairness in the adversary criminal process. *People v. Holmes*, 141 Ill. 2d 204, 217 (1990), citing *United States v. Morrison*, 449 U.S. 361, 364, 66 L. Ed. 2d 564, 567, 101 S. Ct. 665, 667

(1981). The constitutional right to counsel includes the right to counsel of one's own choosing. *People v. Basler*, 304 Ill. App. 3d 230, 232 (1999); *People v. Johnson*, 75 Ill. 2d 180, 185 (1979). "Where a constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest." *People v. Johnson*, 322 Ill. App. 3d 117, 121 (2001). An attorney's relationships *vis-a-vis* certain clients can, without more, create a disabling conflict that taints the outcome of a trial. *People v. Coleman*, 301 Ill. App. 3d 290, 299 (1998). "Counsel's contemporaneous association with either the crime victim or a State's witness forms such a relationship and creates a conflict *per se*." *Coleman*, 301 Ill. App. 3d at 299, citing *People v. Spreitzer*, 123 Ill. 2d 1, 14 (1988). Where facts presenting an attorney's possible conflict of interests are made known to the court, the court must ascertain the extent of the risk and take whatever measures are necessary to protect the accused's guarantee of effective assistance of counsel. *People v. Thomas*, 131 Ill. 2d 104, 111 (1989), citing *Holloway v. Arkansas*, 435 U.S. 475, 484-85, 55 L. Ed. 2d 426, 434-35, 98 S. Ct. 1173, 1178-79 (1978).

■ "There are certain contemporaneous representations that we have decided not to tolerate, even in the absence of a showing that anyone was prejudiced by the existing conflict. Where the competing interests *** are directly at odds, we presume ineffectiveness without any inquiry into how a lawyer actually performed." *People v. Sims*, 322 Ill. App. 3d 397, 413 (2001). Where no *per se* conflict of interest exists, the defendant must show the existence of an actual conflict and actual prejudice. *People v. Becerril*, 307 Ill. App. 3d 518, 525 (1999), citing *People v. Taylor*, 165 Ill. App. 3d 1016, 1021 (1988). Where an actual conflict of interest exists, the defendant is not required to prove that the conflict contributed to his conviction. *Becerril*, 307 Ill. App. 3d at 525, citing *People v. Spreitzer*, 123 Ill. 2d 1, 18 (1988). " '[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' " *Spreitzer*, 123 Ill. 2d at 19, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 64 L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1719 (1980).

■ The supreme court has provided guidance for detecting *per se* conflicts of interest. *Sims*, 322 Ill. App. 3d at 413, citing *Spreitzer*, 123 Ill. 2d at 16. "Where defense counsel has a tie to a person or entity, including his 'own previous commitments,' which would benefit from an unfavorable verdict for the defendant, a *per se* conflict arises." *People v. Woidtke*, 313 Ill. App. 3d 399, 409 (2000); *Spreitzer*, 123 Ill. 2d at 16. "In such a case, the defendant is not required to show prejudice as a result of the representation; the representation is deemed

120

ineffective as a result of the inherent conflict. *Sims*, 322 Ill. App. 3d at 413, citing *Spreitzer*, 123 Ill. 2d at 14-16.

Where defense counsel has represented a State witness, a *per se* conflict of interest exists if " 'the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of the defendant.' " *Coleman*, 301 Ill. App. 3d at 299, quoting *People v. Free*, 112 Ill. 2d 154, 168 (1986); see also *People v. Robinson*, 79 Ill. 2d 147 (1979); *People v. Strohl*, 118 Ill. App. 3d 1084 (1983). The *per se* conflict rule " ' "is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties." ' " *Coleman*, 301 Ill. App. 3d at 299, quoting *People v. Lawson*, 163 Ill. 2d 187, 210 (1994), quoting *People v. Gerold*, 265 Ill. 448, 477 (1914). Whether two things are contemporaneous logically must be determined based upon the unique facts and circumstances of the given situation.

In the case at bar, the trial court concluded that a *per se* conflict of interest existed. We agree. The trial court based this conclusion on the fact that defense counsel's firm had previously represented Montez, the confidential informant concerning the facts alleged in this case. The trial court placed great significance on its understanding that there were similar competing interests at stake. In so ruling, the trial court commented as follows:

"[I]t is clear that the *** firm contemporaneously represented a potential State witness and Defendants in proceedings involving the facts of the instant case. It is well established that knowledge of one member of a law firm is imputed to other members of the firm. Conflicts of interest for one member extend to all members of a firm. *People v. Dace*, 153 Ill. App. 3d 891, 896.

It follows that since defense counsel's firm previously represented confidential informant Montez concerning the very facts alleged in this case, a *per se* conflict exists. *People v. Flores*, 128 Ill. 2d 66, 85.

Thus, the Court must examine whether the defendants have been made aware of the conflict and are able to knowingly waive their right to a conflict-free counsel.
* * *
Under the circumstances of the instant case, similar competing interests are at stake. Although Defense counsel's firm no longer represents State witness Montez, the firm's representation included matters involving the very facts at issue in the case at bar. I place great significance on that.
* * *
Therefore, this court is greatly concerned the Defense counsel's

cross examination might be subliminally restricted or limited in ways incapable of more accurately describing than just to so state.

This court is likewise concerned with the jury becoming aware of the fact that Defense counsel's firm previously represented the State witness and the appearance of impropriety, should the jurors become aware of Defense counsel's prior representation of a State witness in matters directly relating to the case at bar.

For all of those reasons, and after serious reflection, and consideration, this Court has determined that it is appropriate to grant the State's Motion to Disqualify *** the Defendants' attorney in this case. Motion to disqualify defense counsel is granted.

We defer to the trial court on the issue of the existence of the *per se* conflict. While " '[t]he *** Court must recognize a presumption in favor of petitioner's counsel of choice,' " which " 'may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict, the evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.' " *Holmes*, 141 Ill. 2d at 223, quoting *Wheat v. United States*, 486 U.S. 153, 164, 100 L. Ed. 2d 140, 152, 108 S. Ct. 1692, 1700 (1988).

■ We must next address whether the *per se* conflict of interest, once identified, has been waived. A defendant may knowingly and intelligently waive an alleged conflict of interest. *People v. Johnson*, 322 Ill. App. 3d 117, 123 (2001), citing *People v. Fife*, 76 Ill. 2d 418, 424-25 (1979); *United States v. Kladouris*, 964 F.2d 658, 667 (7th Cir. 1992); *Rosenwald v. United States*, 898 F.2d 585, 588 (7th Cir. 1990).

"[A] defendant who wishes to exercise the right to counsel of choice despite a conflict of interest must necessarily waive the right to effective assistance of counsel." *Holmes*, 141 Ill. 2d at 222. "[A] trial court must pass on the issue of whether to allow waiver of a conflict of interest 'not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly.' " *Holmes*, 141 Ill. 2d at 223, quoting *Wheat*, 486 U.S. at 162, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699. "[T]he *Wheat* Court concluded that a trial court 'must be allowed substantial latitude in refusing waivers' not only where an actual conflict exists, but also 'in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.' " *Holmes*, 141 Ill. 2d at 223, quoting *Wheat*, 486 U.S. at 163, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699. In an instance like this, where the trial court must exercise discretion, a court of review will not find error or set aside a ruling of the trial judge unless there has been a clear abuse of discretion. *Holmes*, 141 Ill. 2d at 224.

■ "It is well settled that trial courts must adequately inform defendants of a conflict's *significance* before any waiver of such a conflict can be accepted. A defendant must actually understand how the conflict could affect his attorney's representation, before his right to a conflict-free attorney can be knowingly waived." (Emphasis in original.) *Coleman*, 301 Ill. App. 3d at 301, citing *Lawson*, 163 Ill. 2d at 218. To that end, the trial court held the following discussion with Ortega on the record:

"THE COURT: Let's start with Mr. Ortega. *** Sir, how old are you?

MR. ORTEGA: 27

THE COURT: How far did you go in school?

MR. ORTEGA: Graduated high school.

\* \* \*

THE COURT: Have you ever had any exposure, prior to this case, with the legal system?

MR. ORTEGA: No.

THE COURT: So you have no legal training or knowledge, am I correct?

MR. ORTEGA: No.

THE COURT: What is your understanding of what—you have been present for all of these hearings, am I correct?

MR. ORTEGA: Yes.

THE COURT: Do you know what a conflict is? Do you know what these lawyers are talking about?

MR. ORTEGA: Yes. I'm understanding what they are saying.

THE COURT: What is your understanding?

MR. ORTEGA: Well, that it could be some problems between me and Natal becoming, you know, Mr. Novelle, a lawyer, or we could have discussion between us during the trial or during the sentence that we were to have.

THE COURT: Do you understand Mr. Novelle's law firm previously represented an individual who is going to be a State's witness against you in this case?

MR. ORTEGA: Yes.

THE COURT: You don't have a problem with that?

MR. ORTEGA: No."

■ We are aware that this interchange between the trial court and Ortega took place after lengthy discussions between the trial court and Robert Novelle which were held on the record in front of Ortega himself. These discussions are too lengthy and involved to chronicle here; suffice it to say they support the conclusion that Ortega's choice of counsel was made with knowledge of the potential consequences. We find that Ortega, opting at his peril to retain counsel in spite of a

conflict of interest, made a knowing and intelligent waiver of potentially conflicted representation by attorney Novelle in this case. For the trial court to have held otherwise disregards Ortega's professed choice of counsel. Whether it was a mistake to waive the conflict of interest is something that will become clear in the fullness of time as the trial progresses. In light of the clear waiver by Ortega, it was an abuse of discretion for the trial court, depending on one's perspective, to either stop him from making his constitutional choice or try to save him from himself.

This case is limited to these facts. It is not a posttrial petition by a defendant claiming inadequate representation by counsel under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). This is a pretrial motion by the State intended to get a seasoned legal adversary out of the case where his client wants to stick with his chosen lawyer after clearly being warned by the trial court. It is also a case where the State would be obligated to divulge any "helpful" information to the defendant that it *also* knows without regard to who represents this defendant. *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Under these facts and circumstances, the trial court should have denied the State's petition.

## CONCLUSION

In light of the foregoing, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed; cause remanded.

CAMPBELL, P.J., concurs.

JUSTICE QUINN, dissenting:

I dissent. In reversing the trial court's well-reasoned decision, the majority find that the trial court's holding "disregards Ortega's professed choice of counsel." 329 Ill. App. 3d at 123. In support of this pronouncement, the majority rely almost entirely upon cases which addressed claims of ineffective assistance of counsel. This approach has been squarely rejected by our supreme court. In *People v. Holmes*, 141 Ill. 2d 204, 222 (1990), as here, the defendant appealed on the basis of a claim of denial of counsel of choice. In rejecting defendant's claim, our supreme court held: "[W]e think it is obvious that different standards of review apply to claims of ineffective assistance and to claims of denial of counsel of choice. Because the standards in ineffective assistance claims are inapplicable to the case at bar, we now turn

to discussions of the standard that does apply to defendant's claims." 141 Ill. 2d at 220.

The court then interpreted the holding in *Wheat v. United States,* 486 U.S. 153, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988). There, the defendant sought a substitution of counsel in order to be represented by the same attorney who represented two other defendants in the same drug-conspiracy case. After a hearing, the trial court denied the request for substitution, stating that an irreconcilable conflict of interest existed which could not be waived. The Ninth Circuit Court of Appeals affirmed, and the defendant appealed. The Supreme Court also affirmed, holding:

> "The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat,* 486 U.S. at 164, 100 L. Ed. 2d at 152, 108 S. Ct. at 1700.

In following *Wheat,* our supreme court observed:

> "[A] trial court must pass on the issue of whether to allow waiver of a conflict of interest 'not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly.' (486 U.S. at 162, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699). For this reason, the *Wheat* Court concluded that a trial court 'must be allowed substantial latitude in *refusing waivers'* not only where an actual conflict exists, but also 'in the more common cases where a potential for conflict exits which may or may not burgeon into an actual conflict as the trial progresses.' (486 U.S. at 163, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699)." (Emphasis added.) *People v. Holmes,* 141 Ill. 2d at 223.

In *Holmes,* the defendant was charged in 1982 with an armed robbery that had taken place in 1980. The State filed a motion to remove Holmes' attorney, Leo Holt, from the case because of a conflict of interest. In 1984, a hearing was conducted at which it was determined that Holt had represented the State's primary witness and defendant's codefendant, Ulrich Williams, on an armed robbery charge in 1972 and in a stolen car case in 1977 or 1978. Attorney Holt testified at the hearing that he had conversations with Williams some time in the previous five years and in those conversations he received information that was covered by the attorney-client privilege.

The supreme court affirmed the trial court and appellate court in granting the State's motion to remove Holt. "The State also has a right to have defendant represented by counsel who would not cross

the bounds of propriety by cross-examining a critical State witness regarding matters which were the subject of a prior attorney-client relationship." *Holmes*, 141 Ill. 2d at 226. The court continued: "[A]s the trial court noted, the State has a right to fair trial. Defendant may have wanted Holt to represent him precisely because of Holt's relationship with Williams. Holt no doubt knew more about Williams than a lawyer with no prior connections with Williams. This knowledge potentially would have given defendant an unfair advantage. See *United States v. O'Malley*, (7th Cir. 1986), 786 F.2d 786, 790-91; *United States v. James*, (2nd Cir. 1983) 708 F.2d 40, 45." *Holmes*, 141 Ill. 2d at 227.

The supreme court also found that the trial court properly took into account the probability that, had the court accepted defendant's waiver of conflict-free counsel and had defendant then been convicted, defendant would have appealed, claiming ineffective assistance of counsel based on the conflict of interest. The supreme court also acknowledged the trial court's concern with the appearance of impropriety, "should the jurors become aware, as they undoubtedly would, of Holt's prior representation" of Williams. *Holmes*, 141 Ill. 2d at 226.

The facts in the instant case provide much more support for the trial court's refusing to accept defendant's waiver than did the facts in *Wheat* and *Holmes*. As pointed out by the majority, Donald Novelle represented the State's primary witness, Montez, at the time Montez was "organizing the cocaine purchase from which Ortega now appeals." 329 Ill. App. 3d at 114. Donald Novelle allegedly learned from Montez that his firm's client, Eugenio Natal, was involved in this cocaine purchase but he would not be charged. Donald Novelle represented Montez in his efforts to compel the Metropolitan Enforcement Group to abide by their agreement to give Montez consideration, in the form of a lesser sentence on pending charges, for his help in *this* case. Montez still owes fees to the Novelle firm for their representation in this matter. Donald Novelle told the trial court that he could freely discuss Montez' cases with his brother, Robert Novelle, who represented Natal and Ortega.

In addition to *Holmes*, in *People v. Flores*, 128 Ill. 2d 66, 85 (1989), and *People v. Woidtke*, 313 Ill. App. 3d 399, 411 (2000), the courts held that when courts review claims of conflict of interest based on the prior representation of a prosecution witness (*Flores*) or a different suspect (*Woidtke*), they should consider whether the attorney acquired privileged information from this prior client.

In *People v. Fife*, 76 Ill. 2d 418, 425 (1979), our supreme court found that there is a conflict of interest when one member of a law

firm represents a criminal defendant and another member of the firm "has an affiliation with the Attorney General," even if that affiliation only involves workmen's compensation matters. Consequently, due to Donald Novelle's representation of Montez, all members of the Novelle firm should be disqualified from representing Ortega and Natal.

The majority hold that "[a] defendant may knowingly and intelligently waive an alleged conflict of interest." 329 Ill. App. 3d at 121. While this may be true, the conflict of interest in this case is not *alleged*, it is *per se* and actual. The majority cite *People v. Johnson*, 322 Ill. App. 3d 117 (2001), *People v. Fife*, 76 Ill. 2d 418 (1979), *United States v. Kladouris*, 964 F.2d 658, 667 (7th Cir. 1992), and *Rosenwald v. United States*, 898 F.2d 585, 588 (7th Cir. 1990), as support. All four of these cases involved claims of ineffective assistance of counsel rather than claims of denial of counsel of choice. Consequently, per *People v. Holmes*, 141 Ill. 2d at 222, they are inapplicable to this case.

Like the holding in *Fife*, the holding in *Sims* does not provide support for the majority's position. The defendant in *Sims* was charged with murdering two of her children. Her trial attorney also represented her husband, who was also a suspect in the case. The defendant had told the police and the trial court that her husband had nothing to do with the murders. In spite of this, appellate counsel raised conflict of interest as an issue. In rejecting this argument, the appellate court said "the interests of a defendant and of another suspect can often remain entirely compatible. As long as their interests remain constant, counsel can represent both \*\*\*. Should their interests ever diverge, counsel would be obliged to withdraw from the representation." *People v. Sims*, 322 Ill. App. 3d at 414. Clearly, Montez' interests have diverged from the interests of Ortega and Natal. Consequently, the Novelles had an obligation to withdraw.

I also disagree with the majority's finding that defendant knowingly waived his right to conflict-free representation. When the trial court asked defendant "What is your understanding?" of this issue, defendant replied: "Well, that it could be some problems between me and Natal becoming, you know, Mr. Novelle, a lawyer, or we could have discussion between us during the trial or during the sentence that we were to have." This is gibberish and in no way shows that defendant actually understood "how the conflict could affect his attorney's representation" as required by *People v. Coleman*, 301 Ill. App. 3d 290, 301 (1998).

In *Holmes*, our supreme court noted that "the Seventh Circuit Court of Appeals has rejected a *per se* disqualification rule, even where an actual conflict exists, in favor of a balancing test. *O'Malley*, 786 F.2d at 790." *People v. Holmes*, 141 Ill. 2d at 228. The majority say

that Ortega is "opting at his peril to retain counsel in spite of a conflict of interest" (329 Ill. App. 3d at 122-23) and "Whether it was a mistake to waive the conflict of interest is something that will become clear in the fullness of time as the trial progresses" (329 Ill. App. 3d at 123). Ortega is not opting to retain Novelle at *his* peril; this court is allowing Ortega to retain Novelle at the peril of the State's right to a fair trial, Montez' right to nondisclosure of privileged information given to his attorney, and the trial court's right to rely upon the clear precedent of our supreme court. One does not need to await the fullness of time to see that a mistake is being made.