(No. 93834.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALVARO ORTEGA *et al.*, Appellees.

*Opinion filed April 1, 2004.*

FITZGERALD, J., took no part.
FREEMAN, J., dissenting.

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Lisa Hoffman and Linda D. Woloshin, Assistant Attorneys General, of Chicago, and Renee Goldfarb, Alan J. Spellberg, Tracey Annen, James P. McKay, Jr., Veronica Calderon Malavia and Sari London, Assistant State's Attorneys, of counsel), for the People.

Robert A. Novelle, of Serpico, Novelle & Navigato,

Ltd., of Chicago (Timothy R. Roellig, of counsel), for appellees.

JUSTICE GARMAN delivered the opinion of the court:

In 1996 defendants were charged by indictment with delivery of 999.38 grams of cocaine in violation of section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401 (West 2000)). In 1999, prior to trial, the State successfully moved to disqualify defendants' counsel, attorney Robert Novelle, on conflict of interest grounds. Defendants petitioned for leave to appeal the disqualification order pursuant to Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)). The appellate court dismissed the petition, and defendants petitioned for leave to appeal to this court. We denied the petition but entered a supervisory order instructing the appellate court to hear the appeal. The appellate court reversed the disqualification order. 329 Ill. App. 3d 114. The State then filed a petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), which we allowed. We are now asked to articulate the standard of review and the proper criteria with regard to a trial court's decision to disqualify a criminal defendant's counsel of choice prior to trial.

## I. BACKGROUND

Defendants Eugenio Natal and Alvaro Ortega were charged in connection with the sale of nearly one kilogram of cocaine to Special Agent Dean Endre of the Metropolitan Enforcement Group. The sale was arranged by Juan Montez, a confidential informant working for Agent Endre. Natal, Ortega, Montez and Agent Endre were present during the sale, which occurred on August 1, 1996. On August 15, 1996, attorney Robert Novelle filed a motion on behalf of Natal, and on October 11, 1996, he appeared on behalf of Ortega. Robert Novelle continues to represent both defendants.

Robert Novelle's brother and law partner, Donald Novelle, represented Montez from the end of May 1996, until at least February 27, 1997, in connection with certain criminal charges. Donald's representation of Montez directly involved the drug sale for which defendants are charged. Montez claimed that Agent Endre promised that the criminal charges pending against him would be dismissed in exchange for arranging the sale. When the charges were not dismissed, Donald tried to enforce the alleged promise on behalf of his client. He advised Montez to refuse to answer questions about the sale before a grand jury on September 6, 1996. He then filed a motion to dismiss the charges. Donald litigated the motion to dismiss in a hearing before Judge DeBoni on January 24, 1997. He called Montez as a witness, and Montez testified about the events leading up to the sale and about the sale itself. Judge DeBoni found that Agent Endre did not make the alleged promises and denied the motion to dismiss. By February 27, 1997, Montez had pled guilty and had been sentenced to probation on some of the charges, while the others had been dismissed.

In February of 1999, shortly before defendants Natal and Ortega were to go to trial, the State moved to disqualify Robert Novelle based on a conflict of interest arising out of Donald Novelle's representation of Montez. The trial court held hearings on the motion to disqualify Robert, during which Donald testified that he knew prior to August 1, 1996, that Montez was an informant who was in the process of arranging a sale of cocaine for Agent Endre. Later in August, Donald learned from Assistant State's Attorney Lorraine Scaduto that the sale Montez arranged led to the arrest of defendants, and that defendants were represented by his brother, Robert. Donald subsequently discussed with Robert what Montez had told him with respect to the sale. He felt free to do so because he thought Montez had given him "a waiver

of any conflict of interest." Donald also testified that Montez owed legal fees to the Novelle firm, but that the firm had no plans to try to collect.

The trial court found that Robert Novelle's firm represented a State's witness, Montez, in matters involving the very facts that formed the basis for the charges against defendants. The court found that, although the firm no longer represented Montez, the prior representation raised doubts about Robert's ability to cross-examine Montez. The court also found that there would be an appearance of impropriety should the jury learn that defense counsel's firm had represented a State's witness in connection with the same drug sale that is at issue in the defendants' case. The trial court then granted the State's motion to disqualify Robert.

The defendants took an interlocutory appeal of the disqualification order, which the appellate court heard pursuant to our supervisory order. The appellate court reversed, holding that the defendants had given a clear waiver of their right to conflict-free counsel and that the trial court abused its discretion when it nevertheless disqualified their counsel of choice. 329 Ill. App. 3d at 123. The State appealed. We now reverse the appellate court and affirm the order of the trial court disqualifying Robert Novelle.

## II. THE STANDARD OF REVIEW

The sixth amendment of the United States Constitution guarantees a criminal defendant the right to the assistance of the counsel of his choice, but that right is subject to certain limits. *Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 148-49, 108 S. Ct. 1692, 1697 (1988). Among those limits is a trial court's "substantial latitude" to refuse to allow a defendant to waive his chosen counsel's actual or potential conflict of interest. *Wheat*, 486 U.S. at 163, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699. Trial courts need latitude because

they must decide whether to accept a proffered waiver before trial, when the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Wheat*, 486 U.S. at 162-63, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699.

In *People v. Holmes*, 141 Ill. 2d 204, 228 (1990), we expressly followed *Wheat* to evaluate a defendant's claim that a trial court had denied his right to counsel of choice. *Holmes* held that a reviewing court must not set aside a trial court's decision to disqualify a defendant's chosen counsel unless there has been a clear abuse of discretion. *Holmes*, 141 Ill. 2d at 224. Thus the trial court's decision to disqualify Robert Novelle must be affirmed unless it was a clear abuse of discretion. Generally, a court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

Defendants argue that, because it is particularly important to achieve consistency when a constitutional right is at stake, we should apply a deferential standard of review only to the trial court's factual findings and should review the trial court's "assessment" of the facts *de novo*. Defendants rely on *People v. Crane*, 195 Ill. 2d 42, 51-52 (2001), which involved a claimed denial of the constitutional speedy-trial right. In *Crane*, after noting that speedy-trial claims are decided under a balancing test, we reasoned that:

"when a trial court performs the *** balancing test and weighs the interests of the State against the interests of the defendant in light of the circumstances of the case, there is no need to afford deference to a trial court's determination. The trial court is in no better position than the reviewing court to balance the competing concerns. For this reason, we conclude that the ultimate determination of whether a defendant's constitutional speedy-trial right

has been violated is subject to *de novo* review." *Crane*, 195 Ill. 2d at 51-52.

Defendants contend that the trial court in this case did not base its decision on findings of disputed fact, but only on the undisputed fact that Donald Novelle represented Montez. They argue that we should follow the reasoning in *Crane* and review the trial court's decision *de novo* because, as in *Crane*, the trial court in this case weighed the facts with a constitutional right of the defendants lying in the balance.

We reject defendants' argument. *Wheat* and *Holmes* are squarely on point and clearly require deference to the weight the trial court gave to the facts. We have said that "[a] reviewing court must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion." *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993). Thus a trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts, and our inquiry must consider both the legal adequacy of the way the trial court reached its result as well as whether the result is within the bounds of reason. Moreover, while formal findings of fact and statements of reasons are not required, the trial court must make a record adequate to allow meaningful review of its exercise of discretion. *People v. M.D.*, 101 Ill. 2d 73, 84 (1984), quoting *People v. Taylor*, 76 Ill. 2d 289, 301 (1979). Such review reconciles the need to protect defendants' constitutional right to counsel of choice with the principle that trial courts must have discretion in this area.

## III. THE APPLICABLE CRITERIA

### A

*Wheat* and *Holmes* provide substantial guidance regarding how a trial court may exercise its discretion when ruling on a motion to disqualify defense counsel.

*Wheat* held that a trial court may decline a proffered waiver, not only when it has reason to find an actual conflict of interest, but also when there is a showing of "serious potential for conflict." *Wheat*, 486 U.S. at 164, 100 L. Ed. 2d at 152, 108 S. Ct. at 1699. In *Holmes*, we followed *Wheat* to hold that the trial court acted within its discretion in disqualifying defense counsel when defendant's right to counsel of choice "was overcome by a showing of a serious potential for conflict." *Holmes*, 141 Ill. 2d at 228. Therefore, a trial court may exercise its discretion to deny a defendant's right to counsel of choice only if it could reasonably find that defense counsel has a specific professional obligation that actually does conflict or has a serious potential to conflict with defendant's interests. See, *e.g.*, *State v. Ehlers*, 262 Neb. 247, 260, 631 N.W.2d 471, 483-84 (2001) (following *Wheat* to hold that the trial court erred in disqualifying defense counsel where the record did not show a serious potential for conflict). If the court has grounds to find at least a serious potential for conflict, it must then go on to consider the interests threatened by the conflict or potential conflict.

The trial court " 'must recognize a presumption in favor of [defendant's] counsel of choice.' " *Holmes*, 141 Ill. 2d at 223, quoting *Wheat*, 486 U.S. at 164, 100 L. Ed. 2d at 152, 108 S. Ct. at 1700. The question is whether the interests threatened by the conflict or potential conflict are weighty enough to overcome the presumption. *Holmes*, 141 Ill. 2d at 228. *Holmes* identified four interests or factors that the court correctly considered in determining that the presumption was overcome in that case: (1) the defendant's interest in having the undivided loyalty of counsel; (2) the State's right to a fair trial in which defense counsel acts ethically and does not use confidential information to attack a State's witness; (3) the appearance of impropriety should the jury learn of

the conflict; (4) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction. *Holmes*, 141 Ill. 2d at 226-27. A trial court may weigh any of these factors, as the case requires.

We note *Holmes* did not hold that the four factors just listed are the only ones that a court may consider. A court should seek to fairly consider all the interests that are affected by a conflict in a given case. As the Seventh Circuit said, in an opinion that we cited with approval in *Holmes*: "[T]he decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case." *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986).

An important factor that *Holmes* did not discuss is whether the State's claim that a conflict warrants disqualification is the result of overreaching. The *Wheat* Court put the point rather more harshly when it agreed with the defendant in that case that, "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *Wheat*, 486 U.S. at 163, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699. Without limiting the inquiry that a court may make into the prosecution's conduct, we note that the prosecution's need to call a witness who creates a conflict is often an important consideration. *E.g.*, *United States v. Messino*, 852 F. Supp. 652, 656 (N.D. Ill. 1994); *State v. Miller*, 160 Wis. 2d 646, 659, 467 N.W.2d 118, 122 (1991). In *Messino*, defense counsel had represented two witnesses when they testified before a grand jury regarding the drug distribution conspiracy of which the defendant was allegedly a member. The two were also expected to testify for the government at trial. The court held that disqualification was merited, even

though neither witness would testify directly about the defendant's conduct, because the government had a legitimate need to call the witnesses to establish various facets of the conspiracy. It is even clearer that the witness in this case is important to the prosecution's case because Montez was a witness to the conduct for which the defendants are charged. Montez, the defendants, and Agent Endre were the four persons present at the drug sale. We conclude that in this case the clearly legitimate need to call Montez gave the trial court little or no reason to expressly explore the possibility that the prosecution was overreaching when it moved to disqualify Robert Novelle.

Defendants suggest that it was only at the "last minute" that the State characterized Montez as a "State Witness." They argue that the State acted slowly in responding to requests for information about Montez during discovery. Finally, they point out that Agent Endre was present during the drug sale, and argue the State would not need to call Montez to make its case. They urge us to conclude that the State's effort to remove Robert Novelle is in bad faith. However, the timing of the State's actions and the fact that the State could conceivably proceed without calling Montez as a witness are insufficient bases for a reviewing court to draw such a conclusion. Moreover, it would hardly be appropriate, even for the trial court, to find before trial that the prosecution has no legitimate need to call an occurrence witness such as Montez. Finally, the trial court is in a better position than a reviewing court to judge the motives and intentions of the prosecutors. There is no indication that the trial court in this case suspected overreaching or bad faith on the part of the prosecution.

## B

The parties before this court, and the courts below, largely framed the issue in this case in terms of two ques-

tions: (1) Did Donald Novelle's representation of Montez create a *per se* conflict? (2) Did the defendants provide a valid waiver of the right to conflict-free counsel?

In *Holmes* we explained that the concept of a *per se* conflict applies only to cases where a defendant claims ineffective assistance of counsel due to his attorney's conflict. *Holmes*, 141 Ill. 2d at 220-21. This is not such a case. Rather, *Wheat* and *Holmes* are the controlling precedent.

The appellate court found that defendants provided a valid waiver and reversed the trial court on that basis alone. 329 Ill. App. 3d at 123. However, a valid waiver by itself does not negate the trial court's authority to deny counsel of choice. *People v. Barrow*, 133 Ill. 2d 226, 252 (1989). Among the factors that *Holmes* identified as permissible considerations in the decision to disqualify defense counsel, neither factor (2), the State's right to a fair trial, nor factor (3), the appearance of impropriety, are affected by a valid waiver. Assuming, *arguendo*, that defendants Natal and Ortega did clearly waive the potential conflict, the trial court nevertheless acted within its discretion provided it considered the second and third factors from *Holmes*, or other permissible factors not affected by a waiver, and reasonably concluded that those factors outweigh the presumption in favor of defendants' counsel of choice.

### IV. ANALYSIS OF THE TRIAL COURT'S DECISION

Our first question is whether the trial court could have reasonably found at least a serious potential for conflict arising from Donald Novelle's representation of Montez. *Holmes*, 141 Ill. 2d at 228. The court heard testimony from Donald Novelle about his representation of Montez. After hearing this evidence, the trial court found that there was a *per se* conflict of interest. As we have explained, there was no need to determine whether there was a *per se* conflict. However, we conclude that

record evidence that the trial court relied upon in finding a *per se* conflict would also reasonably support a finding that there is at least a serious potential for conflict. Specifically, the court could find a potential conflict between Robert Novelle's professional obligation to protect confidential information given to him by Montez through Donald Novelle and the interests of the defendants in thorough cross-examination of the witnesses against them. The record shows that Donald Novelle represented Montez in connection with the very facts that are at issue in this case and that Donald discussed his representation of Montez with Robert. Because Montez was to testify for the prosecution, the evidence that Robert Novelle received confidential information from Montez through Donald Novelle is sufficient to support a finding that there is a serious potential for conflict in this case.

The defendants argue that the record indicates there is no conflict because Montez's testimony before Judge DeBoni shows that he will testify that Natal was entrapped. Specifically, they contend that the record shows that Natal was involved in the drug sale only as a favor to Montez, to help Montez keep his alleged bargain with Agent Endre, and that Agent Endre promised Montez that Natal would not be charged. We note, first, that the entrapment defense that the defendants describe does not apply to Ortega and thus would not negate the conflict as to Ortega. Moreover, defendants acknowledged at oral argument that they presented the same argument to the trial court, which nevertheless found a conflict. We cannot say that the trial court's finding was arbitrary, fanciful, or that no reasonable person would agree with it. The evidence that Montez's testimony will support a defense for Natal simply does not eliminate the serious possibility that Montez could testify against Natal's interests on some point.

Defendants assert that Montez waived any conflict. Donald Novelle testified that Montez waived any conflict during what Novelle described as an "informal conference" before Judge Fitzgerald, which took place immediately after Montez refused to testify before the grand jury. The informal conference before Judge Fitzgerald is not of record. Assuming, *arguendo*, that we could find a waiver based on testimony that a waiver occurred, it would not affect our conclusion that the trial court could reasonably find a conflict. In *Wheat* the trial court's decision to deny counsel of choice was upheld even though both the defendant and the potential prosecution witnesses proffered waivers. *Wheat*, 486 U.S. at 157, 100 L. Ed. 2d at 147, 108 S. Ct. at 1696.

The dissent believes the record clearly shows Montez waived attorney-client confidentiality, and contends that a waiver of confidentiality, unlike a waiver of the conflict, erases the conflict itself. The dissent concludes we cannot affirm the trial court's decision even under a deferential standard of review.

We express no opinion about whether there is a crucial difference between a waiver of confidentiality and a waiver of the conflict. The circuit court heard evidence that Montez waived confidentiality and nevertheless granted the motion to disqualify Robert Novelle. Even if we assume, *arguendo*, that a waiver of confidentiality requires the motion be denied, the circuit court's decision must be upheld unless the court was bound to find that Montez waived confidentiality. The dissent claims that failure to so find cannot be affirmed in light of Donald Novelle's testimony regarding Montez's waiver. We disagree.

First, the only thing that the testimony quoted by the dissent clearly shows is that Donald Novelle believed that, if present, Montez would tell the court that he had no objection to Novelle's firm divulging otherwise

privileged information. Donald based this belief on what occurred more than two years previously during the informal conference before Judge Fitzgerald. The record shows that, prior to the quoted testimony, the court tried several times to clarify what occurred during the informal conference. Initially, Donald stated that Judge Fitzgerald recommended that another attorney represent Montez, "even though my client had waived any conflict." Later, Donald gave a lengthy account of the events leading up to the informal conference, which he concluded by again stating that Judge Fitzgerald recommended separate representation for Montez "even though your client has waived any conflict." Shortly after that, the court asked Donald whether he had shared any private information regarding Montez with Robert Novelle. Donald replied, "I had from my client a waiver of any conflict of interest." Finally the court posed the hypothetical question that the dissent quotes. Donald's various statements that Montez "waived any *conflict*," combined with his assertion that Montez *would* waive confidentiality, simply is not a clear statement that Montez actually did waive confidentiality.

Second, even had Donald Novelle clearly and unequivocally testified that Montez waived confidentiality, the trial court would not be bound to hold there was a waiver. There are indeed circumstances in which a fact finder is bound by testimony. *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981). That is, the fact finder may not make an affirmative finding that is the exact opposite of what was stated in the testimony. *Brown*, 88 Ill. 2d at 86, quoting 30 Am. Jur. 2d *Evidence* § 1080, at 227 (1976). However, Donald's testimony that Montez gave an effective waiver of confidentiality is not a factual statement. It states a legal conclusion that may or may not be supported by facts regarding what Montez said and did during the informal conference. Donald did not attempt

to describe what Montez said or did at that time. Furthermore, although he testified that Montez knew that Robert Novelle represented the defendants, he did not relate any other facts pertaining to whether Montez understood what it meant to waive confidentiality. Thus the circuit court lacked facts necessary to draw its own conclusion about whether there was an effective, knowing and intelligent, waiver of confidentiality. We are aware of no authority for the proposition that a court may be bound by testimony that states a bare legal conclusion, even when the witness is an attorney. If there were such a rule, a witness could usurp the function of the court.

We note in this regard that the court could have taken Donald's testimony at something less than face value without finding that Donald was untruthful. The court may have thought that Donald's testimony was a true and sincere statement of the conclusion Donald drew from the informal conference, and yet not found itself bound to adopt that conclusion. The court may have considered that even honest people prefer to draw inferences for themselves rather than against themselves.

Third, testimony about another person's waiver, whatever its merits, is one step removed from a waiver. The alleged waiver itself is not of record. We are not prepared to hold that it was an abuse of discretion to decline to find a waiver by Montez based on Donald's testimony that a waiver occurred over two years before. The cases the dissent cites involved waivers given in open court (*United States v. Oberoi*, 331 F.3d 44, 46-47 (2d Cir. 2003)), or in an affidavit (*United States v. Dalke*, No. 02 CR 50078—5 (N.D. Ill. April 1, 2003)).

In sum, Donald Novelle's testimony is (1) unclear as to whether there was a waiver of confidentiality or merely of the conflict, (2) a bare legal conclusion, and (3) not equivalent to a waiver of record by Montez himself.

Having determined that the trial court could reasonably find at least a serious potential for conflict, the second step in our inquiry is to ask whether the court applied legally proper criteria to determine that the conflict overcomes the presumption in favor of counsel of choice. See *Holmes*, 141 Ill. 2d at 228. Before ruling, the trial court properly referred to *Holmes*. The court noted that the competing interests at stake in *Holmes* were similar to the interests at stake in the present case. The court expressly noted the two factors from *Holmes* that are not affected by the provision of a valid waiver. First, the court noted that the State has a right to a fair trial in which defense counsel does not have access to confidential information about a State's witness that would give the defense an unfair advantage. Second, the court noted that there was a risk of the appearance of impropriety should the jury learn that defense counsel's brother and law partner represented a State's witness. Moreover, the court stressed the fact that Donald Novelle's representation of Montez involved the very facts at issue in this case, which was not true in *Holmes*. The court properly considered that fact because it enhances both the possibility of unfairness to the State and the possibility of an appearance of impropriety. We conclude that the trial court based its disqualification order on legally proper criteria.

Next we must consider whether the court applied its criteria to reach a reasonable result. That is, we must consider whether a reasonable person could take the court's view that the interests threatened by the potential conflict outweigh the defendants' right to counsel of choice. For the following reasons, we find that a reasonable person could do so.

A reasonable person could conclude that it would be seriously unfair to the State if defendants were to use confidential information received from Montez to cross-

examine Montez, or to otherwise mount their defense. Moreover, a reasonable person could fear that if the jury or other members of the public learned that the same law firm is allowed to represent both a prosecution witness and the defendants in connection with the same case, the public would conclude that the trial is not fair or that the defense bar is being allowed to behave unethically. For example, a reasonable person could fear that the public would assume that the Novelle firm must either be less than fully loyal to either the defendants or to Montez. This is not to say that the Novelle brothers have done anything improper. Reasonable people may disagree about whether their representation of both Montez and the defendants would appear improper to the public. The interest of the State in a fair trial and the judicial interest in proceedings that not only are fair but also appear fair are both substantial, and a reasonable person could assign them substantial weight in this case. Thus we find that the trial court reached a reasonable result.

As a final matter, we note that the possibility of unfairness to the State and of the appearance of impropriety are factors that cannot be waived by the defendants or by Montez. In sum, we need not reach the question whether the defendants or Montez provided a valid waiver.

## V. CONCLUSION

The trial court, at the time it ruled on the motion to disqualify Robert Novelle, could reasonably conclude that there was at least a serious potential for conflict. It applied legally correct criteria as it weighed the interests that were threatened by the conflict. Finally, it reasonably concluded that the factors favoring disqualification overcame the presumption in favor of counsel of choice. Therefore, the trial court did not abuse its discretion when it disqualified Robert Novelle and its order must be

affirmed and the judgment of the appellate court reversed. We remand the cause to the circuit court for further proceedings.

*Appellate court judgment reversed;*
*circuit court order affirmed;*
*cause remanded.*

JUSTICE FITZGERALD took no part in the consideration or decision of this case.

JUSTICE FREEMAN, dissenting:

I respectfully dissent.

I agree with the majority on several points. One is the analytical framework for a trial court's resolution of a pretrial motion by the State to disqualify defense counsel. There is a presumption in favor of counsel of choice, which must be respected unless there exists a "serious potential for conflict." 209 Ill. 2d at 365. Even if there is a serious potential for conflict, a defendant might (as in the instant case) attempt to waive any conflict. If so, the court must evaluate whether that waiver sufficiently obviates the concerns raised by the potential conflict. Only if there is a serious potential for conflict, and no effective waiver, may the court grant the State's motion and disqualify defense counsel.

I also agree with the majority that a waiver of conflict by all potential clients is not, without more, reason to overrule a trial court's disqualification order. Even a waiver by all potential clients does not obviate two concerns potentially raised by conflicted representation of a criminal defendant: the State's interest in a fair trial and the concern about appearances should the conflicted representation become known to the jury. 209 Ill. 2d at 364.

I nevertheless depart from the majority because the uncontroverted evidence at the hearing on the motion to disqualify establishes that Montez not only waived the

*conflict of interests* but, more importantly, he also waived *attorney-client confidentiality*. The majority does not consider the difference between these two waivers. Accordingly, I shall attempt briefly to explain their salient distinguishing characteristics.

By waiving a *conflict*, a client acknowledges that the attorney does or may have a conflict of interests, but avows his preference for representation by that attorney regardless. This type of waiver is nothing more than a prospective relinquishment of the waiving party's right to object to an impropriety in the proceedings. It does not purport to *eliminate* a conflict of interest. Rather, it is a statement by a client that he wishes the proceedings to continue notwithstanding any effect that the conflict of interests would have *on him*. Accordingly, the "serious potential for conflict" would still exist. Thus, the State's interests in a fair trial and in avoiding the appearance of impropriety would still remain a valid basis for disqualification of counsel notwithstanding a client's waiver of *conflict*.

I believe that a waiver of *confidentiality* is a much different matter, however. In the instant case, if Montez did indeed agree to waive attorney-client privilege with respect to anything he might have told Donald regarding this case, there would seem to be no conflict of interests to begin with. If Montez waived confidentiality, then Robert would have no "professional obligation to protect confidential information" (209 Ill. 2d at 365), because there would be no confidential information to protect—by his waiver, Montez would have rendered that information unconfidential. See *United States v. Dalke*, No. 02 CR 50078—5 (N.D. Ill. April 1, 2003) ("Because [attorney] does not currently represent [witness] and [witness] has voluntarily consented to waive any claim of privilege he has with respect to confidential information [attorney] may have acquired during the course of his prior representation of [witness], [attorney] no longer labors under any conflict of

interest in using such information to cross-examine [witness]"). See also *United States v. Oberoi*, 331 F.3d 44, 49 (2d Cir. 2003) ("most authorities hold that an attorney may use the confidences of a former client to cross-examine that client if both the former and the current client consent"); *Oberoi*, 331 F.3d at 47, 51 ("the pertinent authorities likely would allow the [attorney] to continue to represent [his client] in the circumstances of this case," where the former client who was a potential witness had consented to cross-examination " 'even if it reveals confidential information' ").[1] *Cf. Holmes*, 141 Ill. 2d at 226 (where defense counsel admitted that due to confidentiality concerns he would restrict cross-examination to matters of public record. Thus, there could be no conflict between that now nonexistent obligation on the part of Robert and "the interests of the defendants in thorough cross-examination").

Accordingly, if Montez waived attorney-client privilege with regard to anything he may have told Donald that bears on this case, then the circuit court would have abused its discretion if it had determined that there was "a potential conflict between Robert Novelle's professional obligation *to protect confidential information* \*\*\* and the interests of the defendants in thorough cross-examination." Thus—since this is the only "serious potential for conflict" which the majority identifies—the presumption in favor of counsel of choice should stand.

---

[1]The *Oberoi* court ruled that counsel should be permitted to withdraw even though counsel could have continued with representation, given the circumstances of that case—counsel's continued belief that withdrawal was most appropriate; the possibility that cross-examination could harm the witness in his still-pending sentencing hearing; the absence of evidence of tactical abuse by the government; and the absence of evidence that the current client was amenable to continued representation. *Oberoi*, 331 F.3d at 52.

And the record clearly indicates that Montez did indeed waive attorney-client confidentiality:

"Q. [by the court] It's your understanding if your client was brought in before me would tell me that he would have absolutely no problem at all with your firm divulging any information that would other wise be considered attorney-client privilege?

A. [by Donald Novelle] As it related to that transaction, Judge.

Q. To that transaction meaning this case present before me?

A. Yes.

Q. And that was done before Judge Fitzgerald?

A. Yes."

This sworn testimony by Donald Novelle was uncontroverted, and nothing in the record suggests that the trial court disbelieved it. Although Montez was listed as a State's witness—the majority notes that it is "clear[ ] that [Montez] is important to the prosecution's case" (209 Ill. 2d at 363)—the State did not attempt to call Montez to rebut this testimony.

The standard of review provides no answer to my concerns. Although I agree with the majority that we must defer to the circuit court's balancing of factors as well as its findings of fact, in the instant case the circuit court never found that there was a "serious potential for conflict." Rather, although the circuit court cited *Holmes*, the court errantly decided the case based on its determination that there was a "*per se*" conflict—a concept which *Holmes* itself makes clear has no relevance to this case, as the majority notes (209 Ill. 2d at 364). Thus, we are not reviewing a circuit court factual finding that there was a "serious potential for conflict." Rather, *the majority* concludes that the evidence "would also reasonably support" such a finding (if the circuit court had made such a finding, which it did not). In other words, we are not reviewing a conclusion which the circuit court *did* reach. Rather, in order to affirm the circuit court's

judgment, the majority states that because of our deferential standard of review we *could* uphold this factual finding if the circuit *had* reached it. I do not believe that it is appropriate to decide the case based on the standard of review, when the factual conclusion at issue—that the evidence supports a finding that there is a "serious potential for conflict"—is our own.

Moreover, even if a deferential standard of review did apply to hypothetical findings of fact, I do not see how we could affirm a finding that there was a serious potential for conflict between Robert's confidentiality obligations and the defendants' interest in cross-examination, in light of Donald Novelle's explicit and uncontroverted testimony that Montez waived confidentiality. Nothing in the record indicates that the trial court did not believe this testimony, nor does the record give this court any reason to disregard it. This is especially true in light of the fact that Donald is an attorney, an officer of the court with ethical responsibilities. This court assumes that attorneys are retained only to serve their clients' interests through ethical means, which surely would not include false testimony under oath. Moreover, it was the State's burden on the motion to disqualify, and Montez is the State's witness. If Donald's testimony that Montez had waived confidentiality was untrue, the State could simply have put Montez on the stand—but the State did not do so.

The majority affirms the trial court's decision to deny criminal defendants their counsel of choice based on its own independent conclusion that the evidence "would" support a factual finding which the trial court never made, notwithstanding uncontroverted sworn evidence by an officer of the court which would wholly contradict such a finding.

I respectfully dissent.