# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Jackson*, 2013 IL App (3d) 110685

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHELLE JACKSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket Nos. 3-11-0685, 3-11-0717 |
| Filed | May 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not abuse its discretion in disqualifying defendant's counsel of choice from representing her in a prosecution for concealing or aiding a fugitive when two of her counsel's former clients in related cases were potential witnesses for the prosecution in defendant's case, thereby creating a conflict of interest for defendant's counsel. |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 11-CF-97; the Hon. Stuart P. Borden, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.

Stewart Umholtz, State's Attorney, of Pekin (Terry A. Mertel and Thomas D. Arado, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion
Presiding Justice Wright and Justice Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Michelle Jackson, was charged with concealing or aiding a fugitive. 720 ILCS 5/31-5 (West 2010). The State moved to disqualify her counsel because counsel also represented the person defendant was charged with harboring, along with an individual who was charged in a related case. The trial court granted the State's motion to disqualify, finding that counsel's prior representation of the two related individuals created the serious potential for a conflict of interest. Defendant appeals pursuant to Illinois Supreme Court Rule 604(g) (eff. July 1, 2006). We affirm.

¶ 2                                    FACTS

¶ 3    On February 25, 2011, defendant was charged with concealing or aiding a fugitive (720 ILCS 5/31-5 (West 2010)). On March 17, 2011, attorney Matthew Hoppock filed an appearance in her case.

¶ 4    The information alleged that on February 24, 2011, defendant harbored, aided, or concealed Jason McGlothlin with the intent to prevent his apprehension. Jason had been charged in two separate causes in Tazewell County for: (1) possession of a controlled substance with intent to deliver, criminal fortification of a residence, and possession of a stolen firearm; and (2) escape. Hoppock was the counsel of record in both of Jason's cases. He was also counsel of record for Jason's wife, Cristy McGlothlin. Cristy was charged with possession of a controlled substance with intent to deliver, criminal fortification of a residence, and possession of a stolen firearm, arising out of the same incident that formed the basis of Jason's first cause. Hoppock eventually withdrew from representation of Jason in his escape case to avoid a potential conflict of interest because of his concern that Cristy could appear as a State witness in that case.

¶ 5    On June 14, 2011, the State filed a motion to disqualify Hoppock as defendant's counsel.

At the time the motion was filed, Hoppock was counsel of record in defendant's harboring case, Jason's drug and weapon case, and Cristy's drug and weapon case. During multiple hearings on the motion, the State made proffers to explain the factual background of defendant's case and the potential for conflict resulting from Hoppock's representation of defendant.

¶ 6 The State explained that on January 28, 2011, Jason and Cristy were both charged in the drug and weapon case; as a result, Cristy was taken into custody, and Jason allegedly fled. That night, defendant went to the McGlothlins' residence and took custody of the McGlothlins' two minor children. On February 25, 2011, police discovered Cristy and Jason present in defendant's residence. All three were taken into custody–Jason for his outstanding warrants, Cristy for a pretrial violation of her bond agreement, and defendant for concealing or aiding Jason.

¶ 7 Following Cristy's arrest, she gave sworn statements at her bond hearing concerning the events of February 24 and 25. She testified that on February 24 she was living at defendant's residence when Jason arrived. Defendant gave a statement to police in which she admitted being aware that Jason was present in her residence on the night of February 24.

¶ 8 The State explained that it planned to call Cristy, and possibly Jason, to testify to defendant's knowledge of Jason's fugitive status. The State argued that this created a conflict and that statements made by the three clients contradicted the claim that defendant was unaware of Jason's fugitive status. In addition, Hoppock had received confidential information from the three clients that would put the State at an unfair disadvantage.

¶ 9 Defendant, through Hoppock, argued that despite the multiple representations, there was no conflict because all three clients' interests were aligned. Hoppock claimed that all three had rejected plea offers from the State, and all three would testify at trial that defendant had no knowledge of Jason's status as a fugitive. The three had also signed written conflict waivers.

¶ 10 Prior to the trial court issuing a decision, Jason was indicted in federal court on his drug and weapon charge, and the State dismissed its case against him. At that point, Hoppock no longer represented Jason in any case.

¶ 11 At a continued hearing on the disqualification issue, Hoppock stated that Jason's new counsel in the escape case informed Hoppock that Jason's potential testimony against defendant may no longer be favorable to the defense. Hoppock recognized that if Jason were to provide incriminating testimony against defendant, Hoppock would need to withdraw from representation because of a conflict of interest. Hoppock also explained that if Jason were to refrain from testifying, Hoppock would need to withdraw. Jason's new attorney in his escape case was present and explained that his advice, along with that of Jason's attorney in his newly filed federal case, was to encourage Jason not to testify in defendant's case. Hoppock admitted that he retained an obligation to Jason based on his prior representation of him.

¶ 12 The trial court found:

"This case is rife with problems. I have never seen a case in my 20 plus years where an attorney tried to wear so many hats and tried so desperately to make arguments that

there is no conflict, whereas arguments are self-defeating.

     \*\*\* I do this with a lot of reservation. I do not like to do this, and this case has been continued many times for you to re-examine your position and you appeared to re-examine it today and then you unre-examined it, and so here we are."

The trial court ordered Hoppock disqualified as defendant's counsel.

¶ 13     Defendant petitioned the appellate court for leave to appeal the trial court's order pursuant to Illinois Supreme Court Rule 604(g) (eff. July 1, 2006). The appellate court granted the petition in a minute order dated August 1, 2012.

¶ 14     On December 2, 2011, Jason pleaded guilty in his escape case, and in May 2012 pleaded guilty in his federal drug and weapon case. On May 18, 2012, Cristy entered a guilty plea, resolving all charges pending against her. Thus, it appears that at the time of the present opinion, none of the charges described in the facts of this case are pending against Jason or Cristy.

¶ 15     Defendant appeals the trial court's order disqualifying Hoppock as her trial counsel.

¶ 16                               ANALYSIS

¶ 17     Defendant argues that the trial court abused its discretion when it disqualified her trial counsel. The sixth amendment of the United States Constitution guarantees criminal defendants the right to effective assistance of counsel (U.S. Const., amend. VI), which encompasses a right to be represented by counsel of choice (*Wheat v. United States*, 486 U.S. 153 (1988)). However, the right to counsel of choice is not absolute. *Id.* " '[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " *People v. Holmes*, 141 Ill. 2d 204, 218 (1990) (quoting *Wheat*, 486 U.S. at 159).

¶ 18     One important limit on the right to counsel of choice comes into play when defendant's preferred counsel has a potential or actual conflict of interest, even where defendant has waived that conflict. The trial court retains "substantial latitude" to refuse a defendant's waiver of her trial counsel's actual or potential conflict of interest. *Wheat*, 486 U.S. at 163; *People v. Ortega*, 209 Ill. 2d 354, 364 (2004) ("[A] valid waiver by itself does not negate the trial court's authority to deny counsel of choice.") As the United States Supreme Court stated:

"[A trial court] must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164.

A trial court's decision to disqualify counsel must be affirmed unless there was a clear abuse of discretion. *Holmes*, 141 Ill. 2d 204. A court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it. *People v. Illgen*, 145 Ill. 2d 353 (1991).

¶ 19    Review of a trial court's decision to disqualify counsel based on a potential conflict of interest involves a two-step process. *Ortega*, 209 Ill. 2d 354. First, the reviewing court should determine whether the trial court properly found a serious potential for conflict. Second, we must determine whether the court applied the proper criteria to determine whether the conflict overcame the presumption in favor of counsel of choice. *Id.* The four nonexhaustive factors for reaching that determination are: (1) the defendant's interest in having undivided loyalty of counsel; (2) the State's right to a fair trial in which defense counsel acts ethically and does not use confidential information to attack a State witness; (3) the appearance of impropriety should the jury learn of the conflict; and (4) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction. *Id.* The second and third factors cannot be waived by a defendant. *Id.* Jason, Cristy, and defendant signed valid conflict waivers. As a result, we will limit our analysis to the second and third factors, which are unwaivable by defendant.

¶ 20    In the present case, the trial court did not abuse its discretion when it disqualified Hoppock despite defendant's waiver of any potential conflict of interest. The court recognized a presumption in favor of defendant's counsel (*Holmes*, 141 Ill. 2d 204), but applied the *Ortega* factors to find that the presumption in favor of preferred counsel was outweighed by the risk of a potential conflict. The trial court's decision was not fanciful, arbitrary, or unreasonable.

¶ 21    As in *Holmes*, a serious potential for conflict exists in the present case because Hoppock's former clients–Jason and Cristy–may testify for the State if defendant's case goes to trial. This would put Hoppock in the precarious position of cross-examining his former client(s). That situation implicates the second and third *Ortega* factors. See *Holmes*, 141 Ill. 2d at 226 (finding that counsel's prior representation of a potential State witness could result in counsel's cross-examination being "improperly restricted, and the adversarial process frustrated"). Hoppock's cross-examination may be hindered–or, conversely, unfairly enhanced–by any confidential information acquired through his representation of Jason and Cristy. The appearance of impropriety to the jury could occur if the State were to impeach Jason's and Cristy's testimony by questioning them about Hoppock's prior representation. Therefore, Hoppock's prior representation creates the potential for future conflict.

¶ 22    Hoppock admitted during the hearings on the State's motion to disqualify that he could provide loyal and zealous representation of defendant only if Jason and Cristy served as defense witnesses at defendant's trial and provided testimony that would serve to exonerate defendant. If Jason or Cristy provided testimony that served to incriminate defendant, Hoppock's loyalties to his present client and his former clients would conflict, and Hoppock would be forced to withdraw from his representation of defendant. This is precisely the kind of potential conflict the trial court has the discretionary power to prevent by disqualifying counsel.

¶ 23    The potential for conflict continues to exist despite the resolution of Jason and Cristy's related cases. The State still may decide to call Jason and/or Cristy as witnesses if defendant's case proceeds to trial. As the United States Supreme Court explained in *Wheat*, a trial court must decide whether to disqualify counsel "not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between

parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 162. The serious potential for conflict persists because Hoppock may still be required to cross-examine his former client(s) should defendant's case proceed to trial. We affirm the decision of the trial court to disqualify counsel based on the second and third factors described in *Ortega*, 209 Ill. 2d 354.

¶ 24                                                    CONCLUSION

¶ 25        For the foregoing reasons, the decision of the circuit court of Tazewell County is affirmed.

¶ 26        Affirmed.